DEANE, In re. See Case No. 3,700.
DEANES (SCRIBA v.). See Case No. 12,-559.

---

## Case No. 3,713.

### The DEAN RICHMOND.

[1 Chi. Leg. News, 370.]

District Court, N. D. Illinois. July Term, 1869.

COLLISION—STEAM AND SAIL—FAULT OF STEAMER.

[A propeller which fails to keep out of the way of an approaching schooner, so that a collision occurs without change of course by the latter, is solely in fault. And she is not excused by the fact that there are other vessels on her right and left, when a sufficient change of course would cause no serious danger of contact with them.]

[This was a libel by E. B. Dean and others against the propeller Dean Richmond to recover damages for a collision with the schooner A. Baensch on Lake Michigan.]

Waite & Clark, for libellants.
Rae & Mitchell, for defendants.

DRUMMOND, District Judge. The libellants, on the 11th of September, 1866, were the owners of the schooner A. Baensch, and about ten o'clock in the evening of that day the schooner was proceeding down the lake, about five miles from the west shore, the wind from west to west-south-west, blowing quite fresh and in gusts, heading about north-half-west, when she came in collision with the propeller Dean Richmond, coming up the lake. The collision occurred about twenty miles from Chicago. When the propeller first made the schooner, the propeller was heading nearly south-half-east, as the course is given by one of the witnesses. The propeller struck the schooner on her port bow, and the schooner immediately sunk and became a total loss. The officers and crew of the schooner were saved on board of the propeller.

The question is, by whose fault this loss was sustained? And I think it was the fault of the propeller. The main controversy turns upon this: Whether the schooner, up to the time of the collision, changed her course. It is claimed by those on board the propeller that her course was changed, and that the result of this was the collision. It is insisted by all those on board the schooner that no change took place up to the time of the collision; that the schooner kept her course until on the instant, as it were, of the collision, and when it appeared imminent an order was given to change the course of the schooner, but before that order was executed the col-

lision took place. I think this seems to be the weight of the evidence: that no change in the course of the schooner occurred. It was undoubtedly the duty of the schooner to keep her course, and the duty of the propeller to avoid her,—to keep clear. It is quite possible that one of the reasons why those on board of the propeller state the schooner did change her course was in consequence of the change in the course of the propeller. Taking the story as told by those on board of the propeller, the schooner was seen about four miles off, in the first instance, from a point to half a point on the port bow of the propeller. Now, this is manifest, I think, that if the course of the schooner had been diligently watched, and the effect of the change of her relative position when the order was given to alter the course of the propeller, that a few minutes would have demonstrated what steps were necessary to be taken by those on board of the propeller in order to avoid the collision, and it would have been clear that they were approaching in almost precisely an opposite course, and therefore what change was indispensable on the part of the propeller in order to avoid the schooner. The failure to do this, I think, was the main cause of the collision. The night had been rainy, but it had cleared off. There is no controversy but that the lights on board of the schooner were proper lights; they were seen from the propeller. The lights of the propeller were seen from the schooner, and it was known, therefore, by those on board of the schooner, that there was a propeller, and it could be seen in a very brief space of time that the propeller was approaching. The only thing that there is in the case to throw doubt upon the question is the fact that there were some propellers, the lights of which were seen by those on board of the Dean Richmond, to the east, as the propeller was coming up the lake, and there was a little apprehension, it might be said, that there would be danger, owing to the proximity of these propellers, and also to the circumstances of there being a sail to the westward, but on the whole, if the propeller had been properly kept in command, I do not think that there was any serious danger of contact with the propellers, or of such a result as to prevent the propeller from attending to the duty which was the most pressing and most in hand for the moment, namely, avoiding contact with the schooner.

Then upon the main point, as to whether the schooner did change her course, the testimony on the part of the libellants, and by all those on board of the schooner, is uniform, and the facts in the case, I think, confirm the truth of that testimony. As already stated, the schooner knew that it was a propeller; knew that it was her duty to keep her course, and that of the propeller to avoid her, and nothing but the appearance of an immediate collision or of imminent peril

from such a cause would naturally induce, in the ordinary course of things, the schooner to change her course.

The amount involved in this case is quite large. The value of the schooner, which, as I have already said, was a total loss, is stated by the different witnesses to be from nine to ten thousand dollars. There were also some valuables on board—some merchandize, amounting to four or five hundred dollars, the property of the libellants. Looking at the testimony on the question of damages, and considering it as fairly as I am able, and the lapse of time, it being now nearly three years since the collision, I have concluded to fix the value of the damages at eleven thousand dollars, and a decree will be entered accordingly for libellants for that amount.